McHugh, J.
This is a case in which the plaintiff, Gustelia Belonni, claims that she was fired from her position as a nurse’s aide at defendant Reservoir Nursing Center in retaliation for her assertion of a worker’s compensation claim.[1] The matter came on for trial without jury.[2] Based on the evidence presented at trial, the exhibits there introduced and the reason *167 able inferences I have drawn from those sources, I find and conclude as follows:
FINDINGS OF FACT
Plaintiff Gustelia Belonni was bom in Haiti 53 years ago. She speaks French, Creole and English. Although English is not her preferred tongue, she can speak and understand English well enough to make herself understood and to exist comfortably in an English-speaking, working environment.
Plaintiff had two years of high school education in Haiti and thereafter ran her own business in Haiti until 1976. From 1976 to 1985, she worked in New York making sweaters and then attended cosmetology school. She then returned to Haiti for several years but ultimately re-entered the United States and came to the Boston area. She began working at the Femald School in November of 1987 and, in October of 1988, began working at defendant Reservoir Nursing Center, Inc. (“Reservoir”), a facility providing long-term care for the aged.
At Reservoir, plaintiff was a nurse’s aide. She cleaned and assisted elderly patients who were living at the facility. She also helped to maintain their rooms and the cleanliness of the bedding and furniture in those rooms. She was paid $8.25 per hour and, on average, worked forty hours per week at Reservoir.
On November 6, 1989, while working at Reservoir, plaintiff was attempting to lift a patient out of bed. While doing so, she hurt her back. She called for assistance and Cynthia Winterkorn, R.N., the charge nurse on duty, came to her assistance. Together they moved the patient and, immediately thereafter, Ms. Winterkorn filled out an incident report describing plaintiffs injury.[3]
Plaintiffs back injury was not significant or painful enough to cause her to miss any time from work or to seek any medical assistance immediately after November 6. She continued to work regularly.
On November 28,1989, plaintiff attended a meeting with Ms. Lori Charles, Reservoir’s Administrator, and Carolyn Delaney, the director of nursing. That meeting was held for the purpose of discussing with plaintiff an incident in which she allegedly had become involved in a loud argument with another employee and, in the process, disrupted the orderly functioning of the Reservoir facility. At the conclusion of the meeting, Ms. Charles told plaintiff that she was going to give her a warning because the incident was not consistent with appropriate standards for employee behavior at Reservoir. Plaintiff became angry and gave Ms. Charles two weeks notice of her intention to quit.
Several days after the November 28 incident, a relative of one of the Reservoir patients complained to Reservoir personnel that the patient had been billed for four long-distance telephone calls she had not made. The total telephone company charge for the calls amounted to $5.25.
Telephones in the individual rooms in Reservoir are in the names of the patients who occupy those rooms and the bills are sent directly by the telephone company to the patients or to those responsible for the patient’s care. The telephone bills are not part of the bills the patients receive from Reservoir.
In any event, upon learning of the complaint, Ms. Charles undertook an investigation. The investigation soon focused on plaintiff. On December 4, 1989, Ms. Charles spoke with plaintiff about the telephone calls. Plaintiff acknowledged making them but claimed to have received permission from Ms. Delaney to do so. Plaintiff agreed to pay the toll charges and did so that day.
In fact, neither Ms. Delaney nor anyone else had given plaintiff any such permission. Ms. Delaney had no power to authorize plaintiff to use patient telephones and knew she had no such power. Moreover, plaintiff had signed a “code of conduct,” Exhibit 4, when she began her employment at Reservoir stating, in effect and among other things, both that she was prohibited from using patients’ telephones and that using those telephones was grounds for immediate discharge. Ms. Charles told plaintiff that she viewed the incident as a serious one and that it was likely to lead to her discharge.
After she met with plaintiff on December 4, 1989, Ms. Charles spoke with Ms. Delaney. Ms. Delaney told Ms. Charles that she had not authorized plaintiff to make the telephone calls. Ms. Charles also reviewed plaintiffs personnel file where she saw, in addition to the warning plaintiff had received for the November 28 incident, two additional warnings. One had to do with plaintiffs acknowledged failure to clean and care for a patient who was incontinent and covered with feces.[4] A second warning concerned an incident in July of 1989 concerning plaintiffs alleged failure to make beds in a patient’s room properly.[5]
On the basis of her review of plaintiffs file, the telephone calls plaintiff acknowledged making and plaintiffs behavior on November 28, Ms. Charles, who had the power to make such decisions, decided to discharge plaintiff. At the time she made the discharge decision, Ms. Charles was not in fact aware that plaintiff had injured her back on November 6. Plaintiff had not informed her of that injury and there was no record of it in plaintiffs personnel file.[6]
On December 6, 1989, two days after she had the conversation with Ms. Charles about the telephone calls, plaintiff for the first time sought medical attention for the November 6 injury she received while moving the patient. She consulted with Dr. Chi Wang, who examined her and had x-rays performed. Although the x-rays were negative, Dr. Wang observed tenderness in plaintiffs lower back. Accordingly, he gave plaintiff a letter stating that she was to perform only “light duty.” After seeing Dr. Wang, Plaintiff went to work and gave Dr. Wang’s note to an unidentified Reservoir employee.
*168 Shortly after she arrived at work on December 6, plaintiff met with Ms. Charles, Ms. Delaney and Sister Clair McCarthy, Assistant Director of Nursing at Reservoir. Ms. Charles told plaintiff she was being fired for making the telephone calls. At the time Ms. Charles told plaintiff of her discharge decision, Ms. Charles did not know that plaintiff was seeking light duty or that she had been advised by Dr. Wang to seek light duty. Indeed, the subject of plaintiffs back injury did not arise during the course of the conversation. Instead Ms. Charles’s decision to discharge plaintiff was based solely on plaintiffs use of the patient’s telephone without permission considered against the backdrop of what Ms. Charles believed was plaintiffs poor work record.
As stated, I reject plaintiffs contention that Ms. Delaney gave her permission to use patient telephones. In fact, pay telephones were available for employee use and plaintiff easily could have made her four telephone calls from the employee telephones. I also reject plaintiffs claim that she repeatedly asked Ms. Delaney for forms with which to file a worker’s compensation claim. She did not make such requests and in fact did not begin to seek medical advice or otherwise focus on a work-related injury until after she was informed by Ms. Charles that the telephone calls constituted a serious incident and would likely lead to her discharge.
CONCLUSIONS OF LAW
G.L.c. 152, §75B provides that an employer may not discharge an employee in retaliation for the filing of a worker’s compensation claim. It is undisputed that plaintiff filed no worker’s compensation claim before her discharge. Nevertheless, the statute is broad enough to prohibit discharge in retaliation for an employee’s assertion of an intention to file such a claim or as a preemptive strike to prevent him or her from doing so.
No appellate decisions at this point articulate the standards to apply in assessing a claim under Section 75B. Plaintiff and defendant have proposed adoption of different standards, each based on models drawn from other contexts. Whatever standard is applied, however, plaintiffs claim does not succeed. The plain fact of the matter is that she was discharged for making the telephone calls, not for asserting a right to file a worker’s compensation claim or seeking light duty because of a work-related injury. This is not a case in which the employer had mixed motives. Indeed, as I have found, the personnel administrator who was responsible for making the discharge decision did not know of plaintiffs injuiy, her desire for light work or her intention to file a worker’s compensation claim at the time she made the discharge decision. Even if some other employee of Reservoir knew of those circumstances, retaliation clearly cannot exist unless the person who made the discharge decision had knowledge of them and thus had something to “retaliate” against.[7]
ORDER
In light of the foregoing, it is hereby ORDERED that judgment enter DISMISSING the remaining count of plaintiffs complaint.

 The initial complaint contained a variety of other counts and claims, all of which were dismissed before the trial began.

 Another justice of this court ruled that plaintiff was not entitled to a jury trial.

 The parties differ on whether the writing at the bottom of Exhibit 1 beneath the typed words “This section may be used ...” was on the form when it was initially filled out. I find that it was not and was added later, shortly after the conversation the writing itself describes. The later addition of the writing at the bottom of Exhibit 1, however, is immaterial to any issue this case involves.

 While acknowledging that the incident occurred, plaintiff claimed that she had misunderstood directions she had been given and thus did not clean the patient.

 I have considered the contents of the warnings, not for their truth, but simply as evidence of what Ms. Charles saw when she reviewed plaintiffs personnel file.

 Testimony at trial suggested that incident reports of the type created after plaintiffs November 6 injury would either be placed in the injured person’s personnel file or in a separate accident report file Ms. Delaney kept in her office.

 In view of the result I have reached, I make no ruling on the admissibility of all, or any part of. Exhibit 9. Exhibit 9 was admitted de bene. Defendant moved to strike in timely fashion and I took that motion under advisement. Exhibit 9 is relevant solely to damages, and for the reasons stated, I shall not reach that question.